UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BLACK HILLS CLEAN WATER ALLIANCE,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE,<br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE,<br><br>Defendants. | 5:21-CV-5072-LLP<br><br>MEMORANDUM OPINION AND ORDER<br>GRANTING SUMMARY JUDGMENT |

Black Hills Clean Water Alliance ("BHCWA"), a non-profit conservation organization dedicated to protecting the Black Hills region's resources and preventing destructive mining in the region, brought suit against the United States Forest Service and the United States Department of Agriculture (collectively "the Agency"), seeking release of certain government records pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.* ("FOIA"). BHCWA asserts subject matter jurisdiction exists pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B), which vests this Court with the jurisdiction to enjoin the Agency from withholding records and order the Agency to produce records improperly withheld from the requester. (Doc. 1 at p. 5, ¶ 18). Now pending is the Agency's motion for summary judgment. (Doc. 19.)

## BACKGROUND

On October 20, 2020, BHCWA submitted a written request for agency records to the Northern Hills District office of the Black Hills National Forest that relate to exploratory gold drilling in the Northern Hills. (Doc. 1 at p. 13, ¶ 48.)

The Agency produced a partial response on December 3, 2020 consisting of 1,627 pages and 17.1 MB of native form data, all of which were released in full via a link to a file sharing service in order to download the files. (Doc. 24 at ¶ 7 and Doc. 24-3.)

1

The Agency then responded by letter dated December 16, 2020. (Doc. 1-2 and Doc. 24-4.) The letter indicated that the Agency's search of "hard and electronic copy records" revealed 2,627 responsive documents. (*Id.*) Certain portions were withheld pursuant to Exemption 5 and Exemption 6 of the FOIA. (*Id.*) The Agency indicated that it searched from January 1, 2018 to November 3, 2020. The letter and responsive records were provided on December 18, 2020, via e-mail and a link to Box, a file sharing service used by the Agency to transmit lengthy attachments. (Doc. 24 at ¶ 8.)

BHCWA appealed the Agency's FOIA determination on March 16, 2021, arguing that the adequacy of the Agency's search, the claimed FOIA exemptions, and the form and format of the production, violated the FOIA. (Doc. 1-3.)

The Washington Office FOIA Service Center issued a "partial response" to BHCWA's appeal on July 8, 2021. (Doc. 1-4 and Doc. 24-5.) The partial response addressed the portion of the appeal concerning the 266 pages with portions redacted under FOIA Exemptions 5 and 6. The Agency released portions of the material originally withheld and explained that some portions must continue to be withheld under Exemptions 5 and 6. (Doc. 1-4 at pp. 2-3.) Of the 266 pages with portions redacted, the Agency continued to invoke redactions on only 26 pages. (Doc. 24 at ¶ 11.) The Agency attempted to address BHCWA's form and format objection by making the responsive records available in a text-searchable form. The Agency said that the adequacy of the search would be addressed under separate cover.

BHCWA initiated this lawsuit on October 21, 2021, asserting that the Agency continued to unlawfully withhold agency records responsive to the FOIA request. (Doc. 1.) After the Complaint was filed, a second response to BHCWA's appeal was produced on November 19, 2021, addressing the adequacy of the Agency's search. This response included a production of an additional 205 pages (12 pages were provided with redactions under Exemption 6), and eight spatial files. These additional responsive records were provided to BHCWA in text searchable format via a link to Box, the Agency's file sharing service. (Doc. 24 at ¶ 13.)

In a related case, this Court issued an Order on June 29, 2022, requiring the Agency to undertake additional searches. *See Black Hills Clean Water Alliance v. United States Forest Service, et al.*, 5:20-cv-05034, at Doc. 48. One of the deficiencies identified in that case was that

archived e-mails were not searched by the Agency.  In light of the June 29 Order in the related case, the Agency conducted a search of archived e-mails in this case.

The Agency filed the motion for summary judgment on July 14, 2022. (Doc 19.)  In support of its motion for summary judgment, the Agency submitted the Declaration of Margaret Scofield outlining the Agency's search for documents responsive to BHCWA's FOIA request.  (Doc. 24.)

On August 31, 2022, the information discovered in the Agency's supplemental search of archived e-mails was provided to BHCWA by e-mail from Ms. Harke. (Doc. 40, Ramsdell Declaration at ¶ 3, and Doc. 40-2.)   The Agency's motion to supplement the record with the August 31, 2022 disclosures was granted by this Court over the objection of BHCWA. (Doc. 43). The documents that were produced to BHCWA on August 31, 2022 included an additional 188 pages of responsive records (59 pages were provided with redactions under Exemptions 6 and 7), 92 spatial data files, and two databases. (Doc. 39-1 at ¶ 8.) A supplemental Vaughn index explains the redactions. (Doc. 39-2.)  These additional responsive records were provided to BHCWA in text searchable electronic format via a link to Box, the Agency's file sharing platform. (Doc. 39-1 at ¶ 8.)

In its brief opposing summary judgment, BHCWA requested leave to conduct some discovery about the adequacy of the search. (Doc. 29 at p. 10.)

On September 6, 2022, the Court held a hearing on the Agency's motion for summary judgment. Addressing the issue of BHCWA's request for discovery, counsel for BHCWA explained that discovery likely could be limited to two specific types of documents similar to those that they have obtained in other FOIA requests. Counsel described the documents as search forms used by the agency to "inform" the search, and e-mails sent out when coordinating the search. On September 21, 2022, the Court granted BHCWA's request to undertake limited discovery related to the adequacy of the Agency's search. (Doc. 42.)

On January 11, 2023, the Court requested an update on the status of discovery from the parties. (Doc. 47.)  As part of its Status Report, the Agency filed copies of the documents that it disclosed in response to BHCWA's discovery requests. (Doc. 49-1.)  The Agency's discovery responses were served on BHCWA on November 15, 2022.  BHCWA did not raise any issues regarding the Agency's discovery responses until after the Court requested a Status Report.  The

Agency asserted that the Court now has all the information necessary to rule on the Agency's motion for summary judgment. (Doc. 48.)

In its Status Report filed on February 10, 2023, BHCWA argued that the Agency's discovery responses confirm that the Agency has failed to comply with the FOIA. (Doc. 50-1.) BHCWA asked the Court to order the Agency to carry out "a new search and production consistent with any findings of fact and conclusions of law the Court may enter, using the date of such an order as the cut-off date." (*Id.* at p. 2.)

A second hearing on the Agency's motion for summary judgment was held on Monday, March 20, 2023. Travis Stills appeared on behalf of BHCWA, and Alison Ramsdell appeared on behalf of the Agency. The hearing focused on the temporal scope of the search.

The Agency's motion for summary judgment is now ready for ruling.

**BHCWA's FOIA Request and the Agency's Search for Responsive Documents.**

On October 20, 2020, BHCWA submitted a written request for agency records to the Northern Hills District office of the Black Hills National Forest that relate to exploratory gold drilling in the Northern Hills District. (Doc. 1 at p. 13, ¶ 48.) Specifically, BHCWA requested the following documents:

> Please provide any and all agency records created or obtained by the Northern Hills District Office or the Black Hills National Forest Office that relate to exploratory gold drilling in the Northern Hills District of the Black Hills National Forest. The subject matter scope of this request must be interpreted broadly, and includes but is not limited to, these specific documents:
>
> - all draft or final plans of operations that have been submitted to the Forest Service since January 1, 2018 involving existing or proposed exploration or mines in the Northern Hills Ranger District;
>
> - all documentation related to gold-related exploration and mining activities by Mineral Mountain Resources.
>
> The present request seeks immediate release of the specifically requested records in electronic format, without waiting for completion of the search and processing all responsive agency records.

(Doc. 1-1 at p. 1.) BHCWA requested the records in electronic format, specifically in searchable portable document format ("PDF"), on physical storage media such as a CD-ROM, DVD, or flash drive. (*Id.* at p. 2.)

Margaret Scofield is the Assistant Director, FOIA, within the United States Department of Agriculture's Forest Service. The Agency submitted her declarations to explain the searches done by the Agency and the documents provided to BHCWA in response to its FOIA request. (Doc. 24 and Doc. 39.) By virtue of her position as the Assistant Director of FOIA for the Forest Service, Ms. Scofield is "responsible for managing and overseeing the identification, collection, and redaction of records responsive to requests and appeals made to the Forest Service assigned to herself or members of the Washington Office FOIA team." (Doc. 24 at ¶ 2.) Further, Ms. Scofield has personal knowledge of the underlying matter based on her "review of the agency records subject to the FOIA requests at issue in this case, and [her] discussions with [her] Forest Service colleagues who are also familiar with the FOIA requests and agency records at issue in this case." (*Id.* at ¶ 3.)

The Agency searched for records with dates from January 1, 2018, to the date of search, which was conducted in November 2020. (Doc. 24 at ℙ 14.) The agency identified nine people as records custodians likely to possess responsive documents. (*Id.* at ℙ 15.) These records custodians searched hardcopy files, electronic files found on searches of laptops and shared drives, and e-mails in MS Outlook. (*Id.* at ℙ 16.) Eight of the records custodians searched their own documents using search parameters they identified as most likely to identify potentially responsive documents. (*Id.* at ℙ 18.) Subject Matter Expert (SME), Lou Conroy, worked with the custodians to ensure searches were likely to identify and capture any responsive records.[1] (*Id.* at ℙ 17.) The date of search varied depending on the date the custodian conducted their search. (Doc. 49-1 at p. 5.)

Responsive records were collected and imported to FOIAXpress, the software used by the agency to process documents in connection with FOIA requests. (Doc. 24 at ℙ 21.) The documents collected from the records custodians were generally received in their native format, then were converted to PDF as they were processed in FOIAXpress. (*Id.* at ℙ 22). Geographic Information Systems ("GIS") data was not processed using FOIAXpress. (*Id.*)

Agency personnel reviewed the documents after they had been processed in FOIAXpress and applied redactions to material believed to be exempt from disclosure under FOIA. (Doc. 24

---

[1] As stated earlier, BHCWA was allowed to conduct discovery related to the reasonableness of this initial search. (Doc. 42.) The Agency produced all documents created, obtained, or used by Agency personnel for the search, including e-mails and search forms. (Doc. 49-1.)

at ¶ 23.) On December 3, 2020, the Agency produced a partial response to BHCWA. (*Id.* at ¶ 7.) This production consisted of 1,627 pages and 17.1 MB of native form data. (*Id.*) The files were available for download or viewing on an electronic file sharing link. (*Id.*) The remaining responsive documents were submitted to the Rocky Mountain Region for further review. (*Id.*)

After review was completed, the Rocky Mountain Region produced a final response to BHCWA's FOIA request on December 16, 2020. (Doc. 24 at ¶ 8.) This production consisted of 2,627 pages with portions withheld under FOIA Exemptions 5 and 6. (*Id.*) The documents were provided to BHCWA via e-mail and a link to Box, a file sharing service used by the Agency when sending attachments too large to transmit through e-mail servers. (*Id.*) The Agency provided BHCWA with a Vaughn index describing the documents withheld and the bases for those withholdings. (*Id.* at ¶¶ 33-35 and Doc. 24-13.)

On March 16, 2021, BHCWA appealed the Agency's FOIA response, arguing that the search was inadequate, the exemptions were not applied appropriately, and the form and format request was ignored. (Doc. 24-5.)

The Agency produced a partial response to the appeal on July 8, 2021, addressing the portion of the appeal concerning the 266 pages with portions redacted under Exemptions 5 and 6. (Doc. 24 at ¶ 11 and Doc. 24-7.) The Agency determined that it would continue to invoke redactions on only 26 pages. (Doc. 24 at ¶ 11.) The responsive documents were provided to BHCWA via a link to Box. (*Id.*) The Agency stated that both the original documents and the updated set were in text searchable format as BHCWA had requested in its appeal. (*Id.*)

Another search was conducted to address the portion of BHCWA's appeal related to the adequacy of the search. The FOIA Analyst assigned to the appeal took the following steps:

    a. The Black Hills National Forest's FOIA Coordinator discovered that custodian Karl Emanuel had not conducted a search during the initial search collection effort. A new search form and instructions were sent to Karl Emanuel on May 25, 2021. The Washington Office FOIA Analyst received the results of his search results on July 23, 2021; results were compared to the original set of documents to identify only the documents that were unique. Through this effort, 203 additional pages of unique content were processed.

    b. The plaintiff stated in the appeal that "very few records appear from agency personnel that have been publicly involved in the processing of the mining proposals, including Christopher Stores (Natural Resources Planner), Michael Hilton (Tribal Liaison), or Karl Emanuel (Northern Hills Ranger District staff)." The SME at Black Hills National

Forest confirmed that a search had been completed by Christopher Stores and that Michael Hilton had not been involved in the search for responsive records because David Porter, Archeologist for the Northern Hills Ranger District, was the direct contact for the project that is the subject of the FOIA request. The SME confirmed that David Porter completed a search for records responsive to Plaintiff's FOIA request.

  c. In addition, the appeal letter stated that "some email records released reference attachments that do not readily appear in the produced materials." The Washington Office FOIA Analyst did a page-by-page review of the 2,627 pages produced to Plaintiff in the Forest Service's final response and confirmed that all of the attachments were provided to Plaintiff, and that attachments immediately followed the email transmittals in the records set.

  d. Furthermore, the appeal letter stated that the provided "records contain a number of agendas and emails about meetings conducted about the project, including communications with representatives of the mining project proponent and its representatives and contractors [and] there do not appear to be any meeting notes or minutes related to these meetings." The assigned Washington Office FOIA Analyst conducted a detailed review of those 2,627 pages and identified all content that referenced meetings that might have resulted in "meeting notes or minutes." The list was provided to SME Lou Conroy in order to determine if there were any missing meeting notes and/or minutes. After a thorough review, the SME found only one document (consisting of an additional two pages) to include in the final responsive records set.

(Doc. 24 at ¶ 19.)

  On November 19, 2021, the Agency produced a final response to BHCWA's appeal addressing the concerns about the adequacy of the search. (Doc. 24 at ¶ 13 and Doc. 24-12.) The response included producing an additional 205 pages and eight spatial files that were located as a result of the search. Twelve of the 205 pages were provided with redactions under Exemption 6. (Doc. 24 at ¶ 13.) These additional documents were provided to BHCWA in text searchable format via a link to Box, the Agency's file sharing service. (*Id.*)

  In a related case, this Court issued an Order on June 29, 2022, requiring the Agency to undertake additional searches. *See Black Hills Clean Water Alliance v. United States Forest Service, et al.*, 5:20-cv-05034, Doc. 48. One of the deficiencies identified in that case was that archived e-mails were not searched by the Agency. In light of the June 29 Order in the related case, the Agency conducted a search of archived e-mails in this case. While this additional search was ongoing, it was described in the Declaration of Margaret Scofield:

    In seeking to address the issues set forth in the Court's recent decision in *Black Hills Clean Water Alliance v. USFS, et al.*, Case No. 20-5034 (hereinafter "BHCWA 1")

with respect to the agency's searches, the agency conducted a supplemental review of its searches for that matter. During this supplemental review of the agency's searches, the agency's Government Information Specialist, Eileen Harke, discovered that because all user mailboxes are set, by default, to place emails that are two years old into an online archive, it is possible that custodians may have conducted their searches in a way that did not capture the archived emails. In light of this possible gap in the agency's searches in BHCWA 1 with respect to archived emails, on July 12, 2022, Eileen Harke quickly double-checked the agency's searches in this matter for purposes of consistency. After conducting this supplemental review, she similarly determined that it is possible that custodians may have conducted their searches in a way that did not capture the archived emails for this matter. Based on this discovery, Ms. Harke is presently aiding the agency in conducting a supplemental, narrowly tailored search to discover whether there are additional responsive records in the form of email correspondence from January 2018 through November 2018. In addition, Ms. Harke will work with custodians to coordinate a search of responsive communications outside of MS Outlook during the relevant timeframe. The agency intends to provide a final supplemental release by August 31, 2022.

(Doc. 24 at ¶ 20.)

On August 31, 2022, the information discovered in the Agency's supplemental search was provided to BHCWA by e-mail from Ms. Harke. (Doc. 40, Ramsdell Declaration at ¶ 3, and Doc. 40-2.) The Agency's motion to supplement the record with the August 31, 2022 disclosures was granted over the objection of BHCWA. (Doc. 43). The Second Declaration of Margaret Scofield describes the additional documents that were produced to BHCWA on August 31, 2022:

The Washington Office FOIA Service Center produced a final supplemental response to FOIA appeal 2021-FS-WO-00072-A on August 31, 2022. This response included a production consisting of an additional 188 pages of responsive records, 92 spatial data files, and two (2) databases located as a result of the supplemental search. In the appeal response, 129 pages and 92 spatial data files, and two (2) databases were released in entirety; and 59 pages were enclosed in part. Redactions were made pursuant to FOIA Exemptions 6 and 7. In accordance with established agency business practice, these additional responsive records were provided to Plaintiff in text searchable electronic format via a link to Box, the agency's file sharing platform.

(Doc. 39-1 at ¶ 8.) The details of the partial withholdings under Exemptions 6 and 7 on 59 pages are set forth in a Supplemental Vaughn index attached to the Second Declaration of Margaret Scofield. (Doc. 39-2.)

The Agency moves for summary judgment. The Agency argues it has satisfied the requirements of the FOIA and has not unlawfully withheld documents.

8

BHCWA argues that the Agency's declarations are not sufficient to support summary judgment in favor of the Agency, that the searches were unlawfully narrow, that the withholdings under the FOIA exemptions are not justified, and that the manner of the Agency's production of records was unlawful. [2]

## DISCUSSION

### A. Summary Judgment Standard

FOIA cases are often resolved at the summary judgment stage. *See Harrison v. Exec. Off. for U.S. Attorneys*, 377 F. Supp. 2d 141,145 (D.D.C. 2005). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party carries the burden to establish no genuine issue of material fact exists on any given issue and that it is therefore entitled to judgment as a matter of law on that issue. *See* Fed. R. Civ. P. 56(a).

In evaluating a motion for summary judgment, the Court views the facts and inferences drawn from the facts "in the light most favorable to the nonmoving party." *Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1209 (8th Cir. 2008); *Anderson*, 477 U.S. at 255. Summary judgment for a defendant agency is only appropriate " 'where the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.' " *Mo. Coal.*, 542 F.3d at 1209 (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)). The agency meets this burden by showing "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Miller*, 779 F.2d at 1382–83 (internal quotation omitted).

---

[2] These arguments were made by BHCWA in its brief opposing summary judgment filed on August 11, 2022. (Doc. 29.) Since that time, the Agency disclosed additional documents after searching archived e-mails (Doc. 39), and the Agency produced numerous documents relating to the adequacy of its searches in response to BHCWA's discovery requests. (Doc. 49.) BHCWA asserts that the Agency still has not complied with the FOIA. (Doc. 50-1.)

## B. Adequacy of the Agency's Searches

"The adequacy of an agency's search for requested documents is judged by a standard of reasonableness, i.e., 'the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant material.' " *Miller*, 779 F.2d at 1383 (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The search "need only be reasonable; it does not have to be exhaustive." *Miller*, 779 F.2d at 1383. "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Id.* Under FOIA, the Court "accord[s] substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility [of a search] . . . and reproducibility" of requested documents. 5 U.S.C. § 552(a)(4)(B).

"[O]nce the agency has shown by convincing evidence that its search was reasonable, . . . then the burden is on the requester to rebut that evidence." *Miller*, 779 F.2d at 1383. "This can be done either by contradicting the [agency's] account of the search procedure or by raising evidence of the [agency's] bad faith." *Id.* at 1384.

### 1. Agency Declarations

As an initial matter, the Court concludes that the declarations of Ms. Scofield are sufficient to support the Agency's motion for summary judgment. Ms. Scofield attests that she is "responsible for managing and overseeing the identification, collection, and redaction of records responsive to requests and appeals made to the Forest Service assigned to herself or members of the Washington Office FOIA team." (Doc. 24 at ¶ 2.) Further, Ms. Scofield has personal knowledge of the underlying matter based on her "review of the agency records subject to the FOIA requests at issue in this case, and [her] discussions with [her] Forest Service colleagues who are also familiar with the FOIA requests and agency records at issue in this case." (*Id.* at ¶ 3.) Ms. Scofield's supervisory position, combined with her thorough description of the searches and familiarity with relevant procedures, constitute sufficient personal knowledge. Ms. Scofield's declarations are detailed, nonconclusory, and reasonably describe the Agency's searches, review, and withholdings in response to BHCWA's request. Courts "apply a presumption of good faith to an agency's affidavits or declarations, which Plaintiff cannot rebut by merely speculating about the existence of other documents." *Rocky Mountain Wild, Inc. v. United States Forest Service*, 56

10

F.4th 913, 923 (10th Cir. 2022). "[O]nce the agency has shown by convincing evidence that its search was reasonable, i.e., that it was especially geared to recover the documents requested, then the burden is on the requester to rebut that evidence by a showing that the search was not in fact in good faith." *Miller*, 779 F.2d at 1383 (citations omitted).

BHCWA objects to "hearsay" in Ms. Scofield's declarations. The agency is required only to submit declarations from the "responsible agency officials" who are best positioned to submit a "comprehensive" declaration. *Russell v. U.S. Dep't of State*, 651 Fed.Appx. 667 (9th Cir. 2016) (unpublished) (citing cases). Declarations from the employee who coordinated the Agency's searches can satisfy the personal knowledge requirement. *See Judicial Watch, Inc. v. U.S. Dep't of Commerce.*, 337 F. Supp. 2d 146, 160–61 (D.D.C. 2004). Furthermore, hearsay is generally permitted in the declarations of the responsible agency officials. *See Allen v. Fed. Bureau of Prisons*, 263 F. Supp. 3d 236, 242 (D.D.C. 2017) ("Declarations containing hearsay in recounting searches for documents are generally acceptable in FOIA cases.") (internal citation and quotation omitted). "An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 814 (2d Cir. 1994).

BHCWA has not contradicted the Agency's account of the search procedure, and it has not raised evidence of bad faith on the party of the Agency.

## 2.   Temporal Scope

In its initial response to BHCWA's FOIA request, the Agency defined the temporal scope of the search as for records with dates from January 1, 2018, to November 2020 - - the date that it began the search. BHCWA argues that the Agency should not have used the initial cut-off date of November 2020 for subsequent searches. Instead, the Agency should have searched for records to the date that it began each additional search. BHCWA does not cite to any cases requiring an agency to extend the initial cut-off date of the search to the date additional searches are conducted. The governing Department of Agriculture ("DOA") regulation provides that when responding to a FOIA request, the DOA will include "only records in its possession as of the date that [it] begins its search." *See* 7 C.F.R. § 1.7(a). At the hearing on March 20, 2023, counsel for the Agency explained that DOA policy is to stick with the initial dates of the search even when conducting

additional searches.  She explained that BHCWA can file a second FOIA request for documents created after November 2020. In the D.C. Circuit, "a date-of-search cut-off has routinely been found to be reasonable, even if the agency performed subsequent searches." *McClanahan v. U.S. Dep't of Justice*, 204 F. Supp. 3d 30, 47 (D.D.C. 2016).  Courts have explained that, under the date-of-search approach, the requester can relatively easily file a second FOIA request for documents created after the cut-off date. *See, e.g., Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005).  At the March hearing, counsel for BHCWA said that it filed two subsequent FOIA requests in October 2022 and February 2023.

The Court concludes that, under the circumstances in this case, applying the November 2020 cut-off date to subsequent searches does not render the Agency's search inadequate.

### 3. Records Custodians

The Agency reasonably identified nine individuals as custodians after determining that communications related to BHCWA's FOIA request would have been routed through or originated by one or more of these individuals.[3]  The Agency's declarations and responses to discovery requests show that it identified the employees most likely to have responsive records.  BHCWA submits that it "identified an additional 79 individuals with various levels of involvement in the mining proposals who were not asked to search." (Doc. 29 at p. 15.) However, there is no evidence that any of those 79 individuals would possess documents in addition to those possessed by the nine custodians.  Because the Agency employees are more familiar with their work than BHCWA or the Court, they are entitled to some deference regarding their determination of records custodians.

### 4. Search Locations

The Agency custodians reasonably searched all locations where the Agency maintains information on gold-related exploration and mining activities by Mineral Mountain Resources in the Northern Hills District.  In *Black Hills Clean Water Alliance v. United States Forest Service, et al.*, 5:20-CV-05034, the Court denied the Agency's motion for summary judgment, in part,

---

[3] One of the custodians, Karl Emanuel, did not conduct a search during the initial search collection effort.  Once the Agency discovered that error, a new search form and instructions were sent to Mr. Emanuel on May 25, 2021, and Mr. Emanuel's search resulted in production of 203 additional pages to BHCWA.  (Doc. 24 at ¶ 19.)

because the custodians failed to search the Agency's hard copy records and archived e-mail records. (CIV 20-5034, Doc. 48 at p. 12.) Here, Ms. Scofield avers that the custodians searched hardcopy records in addition to electronic files found on laptops and shared drives, and e-mails in Microsoft Outlook. Furthermore, in a subsequent search after this Court's decision in CIV 20-5034, the custodians searched archived e-mails. (Doc. 24 at ⁋ 20.)

### 5. Search Terms

A Subject Matter Expert, Mr. Conroy, worked with the custodians to ensure their searches were likely to identify and capture responsive records. Ms. Scofield's declaration lists the terms each custodian used. (Doc. 24 at ⁋ 18). The Agency's documents in response to BHCWA's discovery requests shed even more light on the thoroughness of the custodians' searches. (Doc. 49-1.) The Agency produced all documents used to design and implement the search. (*Id.* at p. 6.) The Court will not micromanage the Agency's search by dictating certain search terms where, as here, the search terms were "reasonably calculated to lead to responsive documents." *Bigwood v. U.S. Dep't of Defense*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) ("Where the search terms are reasonably calculated to lead to responsive documents, a court should neither 'micromanage' nor second guess the agency's search."). *See also Black Hills Clean Water Alliance v. United States Forest Service, et al.*, 5:20-cv-05034, Doc. 48 at pp. 12-14 (refusing to direct a further search with additional terms because it seems to be "micro-managing, which is to be avoided, if possible.").

### 6. Agency Responses to Discovery Requests

A party seeking summary judgment may rely on answers to discovery requests in order to support its assertion that no genuine issues of material fact exist. *See* Fed. R. Civ. P. 56(c). The Agency's responses to BHCWA's discovery requests resolve BWCWA's concerns that the pre-litigation search was unreasonable because it was conducted on "undisclosed dates" and that the Agency failed to provide information about the details of the search. (Doc. 29 at p. 12.) The documents disclosed by the Agency in discovery show the dates each custodian conducted their search. The Agency explained that the date of search varied depending on the date the custodian conducted their search. (Doc. 49-1 at p. 5.) In addition, the documents produced by the Agency provide sufficient information about the details of the searches. (Doc. 49-1.) This discovery further supports granting the Agency's motion for summary judgment based on the adequacy of the searches.

### 7. Supplemental Searches

BHCWA's argument that the Agency's supplemental searches are evidence of bad faith is rejected. The supplemental searches demonstrate the Agency's good faith efforts to locate and release any additional responsive materials that were necessary to comply with the FOIA. Courts consistently hold that an agency's actions to rectify failings of an initial search demonstrate the agency's good faith efforts to conduct an adequate search. *See Stevens v. United States Dep't of Homeland Sec.*, 2014 WL 5796429, at *5–6 (N.D. Ill. Nov. 4, 2014) (citing cases). *Cf. Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 536 (7th Cir. 2005) ("However fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.") (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)).

In summary, the Agency's declarations and responses to discovery requests adequately describe the Agency's searches. Ultimately, BHCWA's arguments rely on speculation that other employees possessed additional documents and that different search terms would have uncovered more documents. That is not enough to rebut the Agency's showing that it conducted reasonably thorough searches for responsive records. *See SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (speculative claims about existence of other documents cannot rebut presumption of good faith afforded agency affidavits) (citations omitted). For these reasons the Court grants summary judgment on the adequacy of the search.

### C. Agency Withholdings Under FOIA Exemptions

The Eighth Circuit has stated that the primary role of a court examining the denial of a FOIA request Court is to:

> review the adequacy of the affidavits and other evidence presented by the Government in support of its position * * *. If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

*Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir. 1980) (quoting *Cox v. U.S. Dep't of Justice*, 576 F.2d 1302, 1312 (8th Cir. 1978) (noting that the "federal courts and federal judges are ill-suited to assume the role of super-administrator in FOIA cases.")). A court may exercise this duty by

evaluating "the propriety of the claimed exemptions on the record before it," or "it may order the agency to submit more detailed affidavits or a *Vaughn* index, or review documents *in camera*." *Gavin v. U.S. SEC*, 2007 WL 2454156 *3 (D. Minn. Aug. 23, 2007) (citing *Barney*, 618 F.2d at 1272). A Vaughn "index usually consists of a listing of each withheld document, or portion thereof, indicating the specific FOIA exemption applicable and the specific agency justification for the non-disclosure." *Miccosukee Tribe of Indians of Florida v. U.S.*, 516 F.3d 1235, 1260 (11th Cir. 2008) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973)).

The Agency's Vaughn index identifies each withheld document by subject matter, author, recipient, and date of creation or receipt, the basis for its withholding, and whether redactions have been applied to withhold the document in full or in part. (Doc. 24-13.)  The index also describes the bases for the withholdings, namely whether each withholding is under FOIA Exemptions 5 or 6. (*Id.*)

### 1. Exemption 5

BHCWA argues that the Agency's Vaughn index is insufficient to demonstrate the applicability of the exemption against producing documents pursuant to the deliberative process privilege and the attorney-client privilege.

Exemption 5 permits an agency to withhold "inter-agency and intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify [under exemption 5] a document must . . . satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Here, the Agency withheld portions of two e-mails pursuant to Exemption 5 based on the attorney-client privilege and the deliberative process privilege.  (Doc. 24-13.)

The attorney-client privilege protects both the giving of legal advice by an attorney, as well as the giving of information by the client for the purpose of receiving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). "The attorney-client privilege fully applies to communications between government attorneys and the government officials and agencies to which they render legal service." *New York Times Co. v. U.S. Dep't of Justice*, 282 F. Supp. 3d

234, 237 (D.D.C. 2017) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)). However, in the context of FOIA, before an agency may withhold records pursuant to the attorney-client privilege under exemption 5, the agency must not only show that the record is subject to the attorney-client privilege but also that the agency "reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). To satisfy the requirements of Exemption 5, the "information must be both 'predecisional' and 'deliberative.'" *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process." *Id.* (internal quotations and citations are omitted.)

In the present case, the Agency withheld a portion of two e-mail communications pursuant to Exemption 5, both of which are described in the Vaughn index attached to the Declaration of Ms. Scofield. (Doc. 24-13.) The e-mails were from Lynne Hagen, identified as the "litigation coordinator." Portions of the e-mails were disclosed. The Vaughn index provides the following bases for withholding portions of the two e-mails from Ms. Hagen:

> ACP - pursuant to the attorney-client privilege, we have redacted certain references to confidential communications between the Department's Office of the General Counsel and Forest Service employees necessary to obtain legal advice.
>
> DPP - pursuant to the deliberative process privilege, we redacted portions of emails containing recommendations or opinions used in a FOIA litigation process regarding a related FOIA request.

(Doc. 24-13.) Ms. Scofield further describes the bases for the redactions in her declaration. (Doc. 24 at ¶¶ 24-26.) She explains that disclosure would stifle open and honest discussions necessary between the Office of the General Counsel and its client agencies relating to both the deliberative process and to providing and obtaining legal advice. (*Id.* at ¶¶ 25(f), 26(b)).

16

The Agency carried its burden of showing that the portions of the two e-mails were appropriately redacted as exempt based on the deliberative process privilege and the attorney-client privilege.

### 2. Exemption 6

Exemption 6 allows for the withholding of "personnel and medical files and *similar files* the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). "[A] record is a 'similar file' if it contains personal information identifiable to a particular person." *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175 (2d Cir. 2014). The exemption covers "not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (internal quotation omitted); *see also Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (finding e-mail addresses among the types of personal information that may properly be withheld as similar files under Exemption 6). "The scope of the privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Prison Legal News*, 787 F.3d at 1147 (internal quotation omitted).

"To apply exemption 6, a court must first determine whether disclosure would compromise a substantial, as opposed to a *de minimus*, privacy interest." *Id.* (internal quotation omitted). "If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure" to determine whether disclosure in that particular instance would constitute a clearly unwarranted invasion of privacy. *Id.* (internal quotation omitted). "The focus of the public interest analysis is the citizens' right to know what their government is up to." *Id.* (internal quotation omitted). The government, through reasonably specific Vaughn indices, affidavits or declarations, "bears the burden of showing that a substantial invasion of privacy will occur if the documents are released." *Id.* Finally, if disclosure would constitute a clearly unwarranted invasion of privacy, then the court must determine whether the agency has met its burden of showing that the agency "reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

Here, the Agency redacted small portions of documents to exclude personal information, such as dial-in conference lines and passcodes, employee cell phone numbers, a personal e-mail

address, references to personal activities outside of the workplace, and a Skype phone number and username.  (Doc. 24-1 at ¶ 28, Doc. 24-13.)  Copies of the pages with redactions are attached to the Declaration of Margaret Scofield.  (Doc. 24-14.)

After the Agency's supplemental search for archived e-mails, the Agency produced an additional 188 pages of records, 92 spatial data files, and two databases located as a result of the supplemental search.  (Doc. 39-1 at ¶ 8.)  A supplemental Vaughn index and the Second Declaration of Margaret Scofield reveal that, on some of the pages, employees' personal information was redacted to protect their privacy. (Doc. 39-1 at ¶¶ 9-10 and Doc. 39-2.)  All of the documents were disclosed in part.  (Doc. 39-2.)

The Court concludes that the information redacted pursuant to Exemption 6, including personal e-mail addresses, phone numbers and addresses, qualify as information similar to that contained in personnel or medical files which may be protected from disclosure under exemption 6.  *See Black Hills Clean Water Alliance v. United States Forest Service, et al.*, 5:20-cv-05034, Doc. 48 at p. 23.  Furthermore, the privacy interests in this information outweighs the public interest in its disclosure.  *See id.*  The Agency sufficiently explained why its withholdings under Exemption 6 were justified.[4]

### D. Form and Format

BHCWA's argument that the Agency failed to produce records in text-searchable format is moot.  After BHCWA filed its appeal in this case, the Agency provided BHCWA with an updated set of documents in text-searchable format.  The Agency also reproduced the original documents in text-searchable format, and all additional responsive documents were provided in text-searchable format.  (Doc. 24 at ¶¶ 11, 13.)

BHCWA also claims it is entitled to receive the records on CD-ROM, DVD, or flash drive instead of through a file-sharing website.  BHCWA relies on the statute mandating that "an agency

---

[4] The supplemental Vaughn index filed on September 9, 2022, shows that, after the supplemental search of archived e-mails, the Agency also withheld portions of records pursuant to FOIA Exemption 7(C) (5 U.S.C. § 552(b)(7)(c)), which permits withholding of records or information compiled for law enforcement purposes.  (Doc. 39-2.) The results of this supplemental search were provided after BHCWA filed its brief in opposition to the motion for summary judgment, and BHCWA has not voiced any objections to the Agency's withholdings under Exemption 7.

shall provide the record [requested] in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B).

The FOIA Request specified "that paper copies be scanned and electronic records be provided on CD-ROM, DVD, flash drive, or other electronic media" in whatever way was "most expeditious." (Doc. 1-2 at p. 2.) Here, the Agency produced the records in a searchable electronic format on a file-sharing website. BHCWA does not contend it was unable to access the documents on the website, or that it had any trouble searching or downloading the records. It is not clear to the Court why the file-sharing website is less desirable than a CD-ROM, DVD, or flash drive.[5] The file-sharing website worked to transmit the information to BHCWA electronically, as it requested, and BHCWA could have downloaded the data to a CD-ROM, DVD or flash drive. Furthermore, the Agency has indicated that the website is the most expeditious way for the Agency to produce electronic documents. (*See* Doc. 24 at ¶ 12.)

For all of these reasons,

**IT IS ORDERED** that Defendants the United States Forest Service and United States Department of Agriculture's Motion for Summary Judgment (Doc. 19) is granted.

Dated this 29th day of March, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_____

[5] Dr. Lilias Jarding, President of BHCWA, indicates in her affidavit that a "physical copy" would provide a verifiable record of the FOIA disclosure, and it would allow her to provide the electronic records to others who don't have the capability of downloading large image files. (Doc. 32-3 at ¶¶ 13-14.) However, Dr. Jarding also states in her affidavit that she has posted everything produced by the Agency to BHCWA's Google Drive, which is publicly accessible with a link to the website. (*Id.* at ¶ 15.) Dr. Jarding does not say she was unable to transfer the data onto a CD-ROM, DVD or flash drive.