UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BLACK HILLS CLEAN WATER ALLIANCE,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE, UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Defendants. | 5:20-CV-5034-LLP<br>5:21-CV-5072-LLP<br><br>MEMORANDUM OPINION AND ORDER REGARDING MOTIONS FOR ATTORNEY FEES AND COSTS |

Plaintiff, Black Hills Clean Water Alliance (Plaintiff or "BHCWA") filed a consolidated motion for attorney fees and costs in two cases against Defendants under the Freedom of Information Act (FOIA).[1] Defendants, United States Forest Service and United States Department of Agriculture (Defendants or "Agency"), agree that Plaintiff is entitled to attorney fees and costs in BHCWA1, but it challenges the number of hours expended and the requested hourly rates. Defendants oppose an award of attorney fees in BHCWA2, arguing that Plaintiff failed to substantially prevail in that case. For the reasons stated below, the Court grants the motion for attorney fees and costs in BHCWA1, and the Court denies the motion in BHCWA2.

## BACKGROUND

Plaintiff BHCWA is "a non-profit conservation organization dedicated to preventing future radioactive and destructive mining in the Black Hills region to protect the region's valuable resources – especially water – for future generations. BHCWA's members include a diverse collection of citizens concerned about the health, environmental, and economic impacts that

---

[1] The two cases are *Black Hills Clean Water Alliance v. United States Forest Service, et al.*, 20:CV-5034 ("BHCWA1"), and *Black Hills Clean Water Alliance v. United States Forest Service, et al.*, 21:CV-5072 ("BHCWA2"). For purposes of the consolidated motion, the parties filed the same documents in both cases.

irresponsible mining projects would have on communities, people, economy, and natural resources." (BHCWA1, Doc. 1, ¶ 22.)

Lead counsel for Plaintiff, Travis Stills, works at Denver Energy & Conservation Law, "a non-profit public interest environmental law firm that provides legal services and representation to public interest organizations without charge to the organizations, based in part, on the potential recovery of statutory attorney's fees." (*Id.*, Doc. 60-1, ¶ 5.) Co-counsel Bruce Ellison is in private practice in Rapid City, South Dakota. Co-counsel Jeffery Parsons works at the Western Mining Action Project in Colorado, "the only group of attorneys on behalf of the public interest that specializes in hardrock mining in the United States." (Doc. 60-2, ¶ 5.)

The background of the two cases is fully set forth in previous opinions of this Court. A summary will be presented here for purposes of the motions for attorney fees.

## I. CIV 20-5034: Mystic Ranger District FOIA Request

Plaintiff submitted a FOIA request to the Mystic Ranger District of the Black Hills National Forest on December 7, 2018. The request was for Agency records "that relate to plans of operations or notices of intent for exploratory gold drilling in the Mystic District of the Black Hills National Forest," including all plans of operations that had been submitted to the Forest Service since January 1, 2018 involving existing or proposed mines in the Mystic Ranger District. On February 12, 2019, the Agency responded that a decision had been made to withhold all responsive records as confidential business information under Exemption 4 of the FOIA. Plaintiff filed an appeal of the Agency's decision on May 7, 2019. The blanket withholding under Exemption 4 was ultimately found by the Court to be contrary to applicable laws and regulations. The Agency asserts that it was unable to respond to the appeal due to inadequate staffing in the Washington Office FOIA unit.

On May 15, 2020, Plaintiff filed its Complaint alleging that the Agency failed to comply with the FOIA. (Doc. 1.) After the lawsuit was filed, the Agency conducted a search for records responsive to the December 7, 2018, FOIA request. The date range for the search was January 1, 2018 through August 1, 2020. As a result, the Agency provided 23,281 pages and 130 megabytes (MB) of Geographic Information System (GIS) data as responsive records.

2

Both parties filed motions for summary judgment. Magistrate Judge Veronica Duffy prepared a Report and Recommendation on the motions. (Doc. 41). On June 29, 2022, this Court issued a 26-page Order adopting in part the Report and Recommendation. (Doc. 48.) Each party's motion for summary judgment was granted in part and denied in part. Among other things, Defendants were directed to conduct additional searches, to submit a supplemental declaration providing additional detail to permit the Court to evaluate whether the Agency's withholdings were proper, to submit an updated Vaughn index for the withholdings, and to provide the Agency's withholdings under FOIA Exemption 5 (litigation privileges) to the Court for in camera review.

After completing the additional searches in accordance with the Court's order, the Agency made a supplemental production of records to Plaintiff on August 9, 2022, including 894 pages of records and 235 MB of GIS files to Plaintiff on August 9, 2022. The Agency said it had complied with the Court's directive that, going forward, documents must be produced in searchable pdf files.

On August 12, 2022, in response to the Court's June 29 Order, the Agency provided the Court with the Declaration of Joshua Sidon, an updated Vaughn index, an unredacted copy of each record withheld under FOIA Exemption 5, and a redacted copy of each record withheld under Exemption 5. After reviewing the documents, the Court concluded that the remaining withholdings pursuant to the attorney-client privilege and the work product doctrine under Exemption 5 were proper. (Doc. 53.)

On June 27, 2023, the case was dismissed because the Agency had fulfilled its obligations under the FOIA. (Doc. 58.)

II.     **CIV 21-5072:  Northern Hills Ranger District FOIA Request**

Plaintiff submitted a FOIA request to the Northern Hills Ranger District of the Black Hills National Forest on October 20, 2020. The request was for Agency records "that relate to exploratory gold drilling in the Northern Hills District of the Black Hills National Forest," including all plans of operations that had been submitted to the Forest Service since January 1, 2018 involving existing or proposed exploration or mines in the Northern Hills Ranger District, and all documentation related to gold-related exploration or mining by Mineral Mountain Resources. Plaintiff's request for expedited processing was denied.

On December 16, 2020, after an agreed upon extension, the Agency provided a partial response consisting of 1,627 pages and 17.1 MB of native form data, released to Plaintiff via a link to a file sharing service—"Box"—in order to download the files. The Agency produced additional documents on December 18, 2020, consisting of 2,627 pages with portions withheld under FOIA Exemptions 5 and 6.

Plaintiff filed an appeal on March 16, 2021, challenging the adequacy of the search, the reliance on Exemptions 5 and 6, and the form and format of the production. Due to the backlog of over 500 open cases at the Washington Office, the Agency denied Plaintiff's request for a "date-certain" by which they could expect a determination of the appeal.[2] (Civ 21-5072, Doc. 24, ¶ 10.)

On July 8, 2021, the Agency provided a partial response to Plaintiff's appeal, addressing the 266 pages of Agency documents that were redacted under Exemptions 5 and 6. The partial response disclosed 2,601 pages in their entirety, including 240 of the 266 pages that had been previously redacted. The Agency continued to invoke redactions on 26 of the 266 pages, and it explained the grounds for the redactions. The documents were provided via a link to Box (the file sharing platform). Plaintiff disputed the form and format of the Agency's response. The Agency explained to Plaintiff why use of the file sharing service allowed it to provide voluminous records to requesters as efficiently as possible.

Plaintiff filed the Complaint in BHCWA2 on October 21, 2021, alleging that the Agency failed to comply with the FOIA. (Doc. 1.)

On November 19, 2021, the Agency provided the final response to Plaintiff's FOIA appeal. The final response included 193 pages and eight (8) spatial files released in full. The Agency explained that 12 pages were redacted to exclude information under Exemption 6, such as employee cell phone numbers, a personal email address, references to personal activities outside

---

[2] In the status update on May 11, 2021, the Agency noted that Plaintiff's FOIA request was number 72 out of 97 cases assigned to the FOIA Analyst working on the appeal. *See* CIV 21-5072, Doc. 24-6. Plaintiff also was informed that, as a standard business process, the appeal response would also be reviewed for legal sufficiency by the U.S Department of Agriculture's Office of the General Counsel. *Id.*

of the workplace, and a Skype phone number and username. The Agency also addressed the adequacy of the search for responsive records.[3]

On July 14, 2022, the Agency filed a motion for summary judgment in BHCWA2. (Doc. 19.) In its brief opposing summary judgment, Plaintiff requested leave to conduct discovery about the adequacy of the search. (Doc. 29 at p. 10.) Though discovery is rare in FOIA cases, the Court granted Plaintiff's request to undertake limited discovery related to the adequacy of the Agency's search. (Doc. 42, p. 5.) In a subsequent status report, the Agency filed copies of the documents that it had disclosed to Plaintiff on November 15, 2022, in response to Plaintiff's discovery requests. (Doc. 49-1.) Plaintiff does not dispute the Agency's assertion that all of the documents produced to Plaintiff in discovery were either non-substantive or publicly available. On January 20, 2023, the Agency asserted that the Court "should have all the information necessary to rule on Defendants' Motion for Summary Judgment." (Doc. 48.)

After careful review of the information provided by the Agency in support of the motion for summary judgment, the Court found that the Agency had satisfied the requirements of the FOIA. The Court granted the Agency's motion for summary judgment in BHCWA2 on March 29, 2023. (Doc. 54.) Plaintiff's motion for attorney fees followed.

## LEGAL STANDARD

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i); *see Miller v. United States Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985) ("Congress amended the FOIA in 1974 to authorized the award of attorneys' fees to parties who had 'substantially prevailed.' ").

The test for whether a FOIA claimant may recover fees has two components: eligibility and entitlement. *Miller*, 779 F.2d at 1389. "The eligibility prong asks whether a plaintiff has

---

[3] In this Court's June 29, 2022 Order in BHCWA1, the Agency was directed to search archived emails. The Agency also conducted a search of archived e-mails for BHCWA2. The same Order could have been entered in BHCWA2, but the fact that it could have been does not make Plaintiff a prevailing party in BHCWA2. Instead, the Agency's prompt disclosure in BHWCA2 after the entry of the Order in BHWCA1 mooted that argument in BHWCA2. The information discovered in the supplemental search of archived e-mails was provided to Plaintiff on August 31, 2022.

5

'substantially prevailed' and thus 'may' receive fees." *Brayton v. Office of the United States Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (quoting *Judicial Watch, Inc. v. United States Dep't of Commerce.*, 470 F.3d 363, 368 (D.C. Cir. 2006)). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* (emphasis in original); *see also Miller*, 779 F.2d at 1389.

## DISCUSSION

### I. Eligibility for Attorney Fees

The Court must first decide whether Plaintiff has "substantially prevailed" in BHCWA1 and BHCWA2 and is therefore "eligible" to receive fees. The Agency concedes, and the Court concludes, that Plaintiff is eligible for attorney fees in BHCWA1 because it substantially prevailed through this Court's June 30, 2022 Order granting relief to Plaintiff on several grounds. However, the Agency argues that Plaintiff did not substantially prevail in BHCWA2 and is not eligible for attorney fees in that case.

The parties do not agree on the test for determining whether Plaintiff is eligible for attorney fees. Prior to the 2001, courts applied the "catalyst theory" for determining whether a plaintiff substantially prevailed. *See First Amendment Coalition v. United States Dep't of Justice*, 878 F.3d 1119, 1127 (9th Cir. 2017). Under the "catalyst theory," a plaintiff has substantially prevailed if it is able to show: (1) "that prosecution of the action could reasonably be regarded as necessary to obtain the information;" and (2) "that the existence of the lawsuit had a causative effect on the release of the information." *Miller*, 779 F.2d at 1389 (citing *Ginter v. Internal Revenue Service*, 648 F.2d 469, 471 (8th Cir. 1981). In 2001, the Supreme Court rejected the "catalyst theory" and held that parties substantially prevailed under the Fair Housing Act and the Americans with Disabilities Act only if they received a favorable judgment on the merits or a court-ordered consent decree. *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 604 (2001). Some circuit courts extended this holding to decisions on attorney fee awards under the FOIA. *See Zarcon, Inc. v. N.L.R.B.*, 578 F.3d 892, 894 (8th Cir. 2009).

The OPEN Government Act of 2007 made several amendments to the FOIA. One amendment added the provision in subsection E(ii)(II) making plaintiffs eligible for attorney fees

if the agency makes a voluntary or unilateral change in position.[4] 5 U.S.C. § 552(a)(4)(E)(ii)(II). The statute now allows a plaintiff to establish that it has "substantially prevailed" and is eligible for a fee award if it obtained relief through either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II).

In BHCWA2, Plaintiff did not obtain relief through a judicial order, written agreement, or consent decree. Instead, Plaintiff claims eligibility for attorney fees in BHCWA2 under the second provision of the statute, 5 U.S.C. § 552(a)(4)(E)(ii)(II), arguing that the Agency made "a voluntary or unilateral change in position" after the lawsuit was filed because the Agency produced additional documents during litigation.

Plaintiff criticizes the Agency for citing cases that pre-date the 2007 FOIA amendments, appearing to argue that the "catalyst theory" no longer applies to a determination whether a plaintiff substantially prevailed under subsection E(ii)(II). However, after the 2007 amendments to FOIA, the Eighth Circuit held that subsection E(ii)(II) "definitively established that the 'catalyst theory' applies to the recovery of attorney's fees under FOIA." *Zarcon*, 578 F.3d at 894. Other circuit courts have reached the same conclusion. In 2017, the Ninth Circuit noted that "six circuit courts to have addressed the impact of the amendment have held that it simply reinstated the pre-*Buckhannon* catalyst theory of recovery." *First Amendment Coalition*, 878 F.3d at 1128 (citing cases and stating that the courts "have implicitly rejected the notion that subsection E(ii)(II) should be construed literally to allow for the recovery of attorney's fees without the need to establish causation once there is a voluntary disclosure or change in position subsequent to the initiation of FOIA litigation"). As the D.C. Circuit explained in a 2020 case:

> In the OPEN Government Act of 2007, however, Congress disagreed with the Supreme Court [in *Buckhannon*] and amended FOIA. As we have recounted several times, "[t]he purpose and effect of this law . . . was to change the 'eligibility' prong back to its pre-*Buckhannon* form," *Brayton*, 641 F.3d at 525, and thus to "reinstate[ ] the catalyst theory in FOIA actions," *Judicial Watch, Inc. v. F.B.I.*, 522 F.3d 364, 370 (D.C. Cir. 2008). We have therefore returned to our original understanding, whereby a plaintiff can prove

---

[4] Before 2007, the fee provision in FOIA simply provided for fees and costs "in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E) (2006).

7

fee eligibility by showing that its lawsuit "substantially caused the government to release the requested documents before final judgment." *Brayton*, 641 F.3d at 524-25.

*Grand Canyon Trust v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020).

This Court is bound by the Eighth Circuit's holding in *Zarcon*. *See, e.g., Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (holding that district courts in the Eighth Circuit are bound to apply Eighth Circuit precedent). Accordingly, this Court must apply the "catalyst theory" to decide whether Plaintiff substantially prevailed in BHCWA2. Under the "catalyst theory," Plaintiff must demonstrate a causal link between the BHCWA2 lawsuit and the Agency's disclosure of information or change in position.

The Agency contends that the BHCWA2 lawsuit was not necessary to obtain the information, and that the documents released during the pendency of the BHCWA2 lawsuit "were either a continuation of the administrative process or a response to court-ordered action in BHCWA1." (Doc. 63, p. 6.) In its brief, the Agency sets forth a timeline regarding the production of FOIA documents to Plaintiff in BHCWA2:

> [T]he Forest Service timely responded to Plaintiff's underlying FOIA request by producing 1,627 pages of responsive records and 17.1 MB of data on December 3, 2020. Docket 23 at ¶ 7. These documents were released in full. *Id.* The remaining responsive records were submitted to Region 2 for further review, and the Forest Service produced its final response to the underlying FOIA request on December 16, 2020, which included 2,627 pages of responsive records with portions withheld under FOIA Exemptions 5 and 6. *Id.* at ¶ 8.
>
> Plaintiff submitted an appeal to the Washington Office's FOIA Service Center, which was dated as received on March 16, 2021. Docket 23 at ¶ 9. The Washington Office provided Plaintiff with a status update on May 11, 2021, explaining that the request was number 72 out of 97 cases assigned to the FOIA Analyst working on the appeal. *Id.* at ¶ 10. On July 8, 2021, the Washington Office produced a partial response addressing the portion of the appeal concerning the 266 pages of documents that contained redactions under Exemptions 5 and 6. *Id.* at ¶ 11. The partial response further indicated that the Forest Service would continue to invoke redactions on only 26 pages of documents—24 pages under Exemption 5 and two pages under Exemption 6—and explained the rationale for those redactions. *Id.*
>
> On October 21, 2021, before the Forest Service had completed its response to Plaintiff's FOIA Appeal, Plaintiff filed the instant litigation. Docket 1. Regardless, the Forest Service completed its response to Plaintiff's FOIA Appeal on November 19, 2021, disclosing an additional 205 pages of responsive records and eight spatial data files. *Id.*, Docket 23 at ¶ 13. In all, Plaintiff's underlying FOIA request yielded 4,459 pages of responsive records and eight spatial data files.

As previously indicated, the Forest Service voluntarily produced an additional 188 pages of responsive records, 92 spatial data files, and two databases on August 31, 2022, after conducting a supplemental search based on a technicality discovered in the course of conducting supplemental searches in BHCWA1. Accordingly, at best, it could be said that the litigation in BHCWA1—not BHCWA2—was reasonably necessary to obtain those additional records. Finally, the 122 pages of records produced in response to Plaintiff's limited discovery in this matter were either nonsubstantive or publicly available. Notably, Plaintiff does not attempt to argue that the instant litigation was reasonably necessary to yield such an inconsequential production.

(Doc. 63, pp. 8-9.)[5]

In its reply brief, Plaintiff does not dispute the timeline described by the Agency. Plaintiff argues that "[t]here is no doubt that the pre-litigation production fell short of the productions BHCWA obtained during litigation." (Doc. 68, p. 14.) However, timing of production alone is not enough to establish that a lawsuit caused the agency to release information. *See, e.g., Weisburg v. United States Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984) ("[T]he mere filing of [a] complaint and subsequent release of documents is insufficient to establish causation."); *Simon v. Fed. Bureau of Prisons*, 2016 WL 5109543, at *6 (D. Minn. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5219582 (D. Minn. Sept. 20, 2016) ("The timing of the BOP's production, after Mr. Simon filed suit, is certainly relevant to the question of causation, but that timing alone is not enough to establish that the litigation caused the release of information.").

Plaintiff also contends that it filed the BHCWA2 lawsuit because the Agency did not address the administrative appeal within the 20 days required by statute.[6] In *Ginter*, the Eighth Circuit found that a six-month delay in responding to a FOIA request did not require the plaintiff to file a lawsuit in order to obtain the requested information. 648 F.2d at 473. The IRS was unable to locate the information and was in the process of conducting a special search when the lawsuit

---

[5] In addition, footnote 2 of the Agency's brief states: "The Forest Service received Plaintiff's FOIA request on November 3, 2020. Docket 23 at ¶ 4. On November 16, 2020, the Forest Service provided Plaintiff a formal notification letter denying its request for expedited processing. *Id.* at ¶ 5. On December 2, 2020, the Forest Service contacted Plaintiff by email to request a ten-day extension to respond, which Plaintiff permitted. *Id.* at ¶ 6." (Doc. 63, p. 8 n.2.)

[6] An agency shall "make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal." 5 U.S.C.A. § 552(a)(6)(A)(ii).

was filed. *Id.* at 471. The IRS found and released some of the documents after the lawsuit was filed. The Eighth Circuit held that the agency's disclosure of documents after the lawsuit was filed was not enough to indicate that the litigation had a causative effect on the production of the documents. *Id.* The Eighth Circuit upheld the district court's denial of attorney fees because the lawsuit did not have a causative effect on the production of records. *Id.*

Here, Plaintiff filed its administrative appeal in BHCWA2 on March 16, 2021. In an update on May 11, 2021, the Agency explained to Plaintiff that there was a backlog of appeals. The Agency issued a partial response on July 8, 2021, disclosing 2,601 pages and explaining the basis for redactions on 26 pages. Plaintiff filed the lawsuit in BHCWA2 on October 21, 2021. The Agency completed its response to the appeal approximately one month later, on November 19, 2021. There is no indication that the lawsuit caused the Agency to provide the information on November 19, 2021. The Agency had begun processing the appeal and had even made a partial response to the appeal before the lawsuit was filed. The additional information provided by the Agency in August of 2022 was discovered in a supplemental search that was conducted in accordance with this Court's June 22, 2022 Order issued in BHCWA1. The limited discovery that Plaintiff was allowed to conduct in BHCWA2 resulted in production of information that was either non-substantive or publicly available.[7] As in *Ginter*, there is no indication that the Agency notified Plaintiff before the BHCWA2 lawsuit was filed that the appeal would be denied without further information, and there is no showing that the Agency changed its position in response to the lawsuit in BHCWA2.

Plaintiff cites *American Immigration Council v. United States Dep't of Homeland Security*, 82 F.Supp. 3d 396 (D. D.C. 2015), for the proposition that it need not show "bad faith, laziness, or human error" on the part of the Agency in order to recover attorney fees under FOIA. It is true that Plaintiff need not show bad faith, laziness or human error. As outlined above, the test for substantially prevailing is whether Plaintiff has shown that its lawsuit in BHCWA2 caused the Agency to release documents. Prior to the lawsuit in *American Immigration Council*, "the agency had emphatically declared in no uncertain terms that no additional responsive material existed."

---

[7] The information "included the Forest Service's 48-page FOIA Handbook, which is otherwise publicly available, and internal email communications related to Plaintiff's underlying FOIA request, which included general information about conducting searches and directions as to how to locate potentially responsive documents." (Doc. 63, p. 10) (citing Doc. 49-1, pp. 9–130).

10

*Id.* at 403. The district court held that the agency's release of 156 additional responsive documents showed that a change in the agency's position occurred during the litigation. *Id.* at 404. It was clear to the court that the lawsuit was a necessary catalyst to prompt the agency to conduct a more thorough search. *Id.* Similarly, in finding that the requester in *Miller* was entitled to attorney fees, the Eighth Circuit noted that agency officials continued to release documents after the lawsuit was filed even after repeatedly stating that all responsive documents had already been released. *Miller*, 779 F.2d at 1388. In contrast, the Agency in BHCWA2 never said there were no more documents and then changed its position due to the lawsuit.

Based on the record before this Court, the Court cannot conclude that the BHCWA2 lawsuit caused the Agency to release additional documents. There was never a time that the Agency suggested no additional responsive records existed. The Agency's timeline of events shows the Agency was processing Plaintiff's appeal before Plaintiff filed its lawsuit on October 21, 2021. It appears that the Agency's production of records in BHCWA2 either was part of the normal administrative process or more likely was due to this Court's Order in BHCWA1, and not because of the second lawsuit. With no evidence to suggest a causal nexus exists between the filing of Plaintiff's action in BHCWA2 and the Agency's surrender of additional information, the Court concludes that Plaintiff has not "substantially prevailed" and is thus not eligible for attorney fees in BHCWA2.

In contrast, Plaintiff substantially prevailed before this Court in BHCW1 by obtaining relief through a judicial order. 5 U.S.C. § 5(a)(4)(E)(ii)(I). Because Plaintiff is eligible for attorney fees in BHCWA1, the Court must turn to the second step and determine whether Plaintiff is entitled to attorney fees in that case.

## II.  Entitlement to Attorney Fees in BHCWA1

The Agency does not contest Plaintiff's entitlement to attorney fees in BHCWA1. When determining whether a party is entitled to attorney fees, courts consider a number of factors including: "(1) the benefit to the public to be derived from the case; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records which he seeks; and (4) whether the government's withholding of the records had a reasonable basis in law." *Miller*, 779 F.2d at 1389 (citing *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 483 (D.C. Cir. 1980)). Each factor is addressed below.

### A. Public Benefit

The Eighth Circuit has stated, "Probably the most important consideration in determining entitlement to fees in a FOIA case is the benefit to the public which is to be derived from release of the information sought." *Miller*, 779 F.2d at 1389. The declaration of Dr. Jarding highlights the public benefit of obtaining the information from the Agency in BHCWA1:

> BHCWA members, including myself, participate in public land management issues on behalf of the organization itself and on behalf of other members. Public comments, appeals, and objection opportunities are used to ensure government agencies use the procedures and apply the standards that Congress has adopted to implement federal environmental policies that provide important protections to public lands, water, cultural resources, fish, wildlife, and the human environment. These formal opportunities are an important means by which the federal agencies are informed BHCWA's membership's concerns.
>
> Freedom of Information Requests, such as the one I filed that led to this litigation, are a critical tool that ensures BHCWA can participate and provide timely, informed, and substantive comments on mining proposals the Forest Service receives.

(Doc. 34-3.)

The public has a strong interest in and significantly benefits from the requested information about mining activities in the Black Hills. Given the purpose of Plaintiff's organization to oversee agency compliance with federal environmental policies and procedures, the Court concludes that Plaintiff provided a significant public benefit by requesting the information in BHCWA1. BHCWA1 also had the additional benefit of correcting a nondisclosure position that was contrary to law and the public interest.

### B. Commercial Benefit

"To the extent that the requester seeks government information primarily for private gain, his FOIA action is a matter of his own concern and expense and not of advocacy to serve a public interest." *Miller*, 779 F.2d at 1390. Plaintiff is a public interest environmental group dedicated to preventing destructive mining in the Black Hills National Forest in order to protect the region's resources. There is no indication that Plaintiff undertook the FOIA request for commercial purposes. This factor weighs in favor of eligibility.

### C. Interest in the Records

The Eighth Circuit has explained that "[w]hen the FOIA requester acts on behalf of an articulated public interest, or when he seeks information for disinterested scholarly purposes, he is more likely to be furthering the purposes of FOIA than when his primary interest is to advance a purely personal goal." *Miller*, 779 F.2d at 1390 (citing *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978); *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977)). This is not a case where a plaintiff is using the FOIA to subsidize personal gain. Instead, BHCWA is seeking to benefit the public interest in maintaining the Black Hills National Forest for future generations. This factor also weighs in favor of fees.

### D. Reasonableness of Agency's Withholding

"The fourth factor considers whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.' " *Davy v. C.I.A.*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (citations and quotations omitted). In BHCW1, the Agency first withheld all documents responsive to the FOIA request based solely on the assertion that they were exempt from disclosure, and the Agency never responded to Plaintiff's appeal. Litigation revealed that the Agency lacked a legal justification for many of its withholdings. The few withholdings ultimately allowed were for reasons other than initially claimed by the Agency. The Agency's unreasonable withholding of all records until after Plaintiff filed the lawsuit weighs in favor of awarding attorney fees.

For all of these reasons, the Court concludes that Plaintiff is entitled to attorney fees in BHCWA1.

## CONCLUSION

The Court has determined that Plaintiff is both eligible for and entitled to attorney fees and costs in BHCWA1, but Plaintiff is not eligible for fees or costs in BHCWA2. However, Plaintiff combined the legal work on the motions for attorney fees instead of separating the time spent on each motion as it did with the underlying litigation. Thus, the Court will require Plaintiff to submit a supplemental brief explaining its reasonable costs and attorney fees solely related to preparing the motion for attorney fees in BHCWA1. Defendants will have an opportunity to respond.

Plaintiff inadvertently omitted the time sheets of Travis Stills with its initial motion for attorney fees and instead filed Mr. Stills's time sheets with its reply brief. Because the time sheets were omitted from Plaintiff's initial motion, Defendants did not have a chance to fully respond to the reasonableness of hours expended by Mr. Stills. Accordingly,

**IT IS ORDERED:**

1. That Plaintiff's motion for attorney fees is granted as to BHCWA1 (Civ. 20-5034, Doc. 60). Plaintiff's motion for attorney fees is denied as to BHCWA2 (Civ. 21-5072, Doc. 61).

2. Within fourteen days from the date of this Order, Plaintiff shall submit a request for its reasonable attorney fees and costs solely related to the litigation and the motion for attorney fees in BHCWA1, along with a brief and the materials substantiating that request.

3. Defendants shall have ten days to file a response to Plaintiff's request for fees and costs in BHCWA1.

4. Plaintiff shall have five days after receipt of Defendants' response to file a reply brief.

5. After reviewing the submissions from the parties, the Court will calculate the amount of reasonable attorney fees and costs in BHCWA1.

6. The motions to extend are denied as moot. (Docs. 61 and 66 in CIV 20-5034; and Docs. 62 and 67 in CIV 21-5072 .)

Dated this 13th day of February, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

14